IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MIRNA LIZ MARTINEZ,

                    Plaintiff,

        v.

CAROLYN W. COLVIN,

                    Defendant.

CIVIL ACTION
NO. 13-5415

## OPINION

**Slomsky, J.**                                                    **August 13, 2015**

## I.    INTRODUCTION

Before the Court are Plaintiff Mirna Liz Martinez's Objections to the Report and Recommendation filed by United States Magistrate Judge Thomas J. Rueter denying Plaintiff's Request for Review.  (Doc. No. 19.)  On September 18, 2013, Plaintiff filed a Complaint against Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration.  (Doc. No. 3.)  Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of Defendant's final decision denying her claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act").  (Doc. No. 3.)  Plaintiff requests relief in the form of an Order reversing Defendant's final decision, and remanding the matter for calculation of benefits or for a new hearing.  (Doc No. 12 at 3.)

On October 28, 2014, Magistrate Judge Rueter filed a Report and Recommendation (the "R&R") recommending that the Court deny Plaintiff's Request for Review.  (Doc. No. 16.)  Plaintiff has filed two Objections to the R&R.  (Doc. No. 19.)  Plaintiff's first Objection is that Judge Rueter's conclusion that the Administrative Law Judge (the "ALJ") had no duty to rule on Plaintiff's request for a consultative examination with I.Q. testing was erroneous and contrary to

law.  (Id. at 1.)  The second Objection is that Judge Rueter "erred in concluding that the ALJ properly weighed the expert opinions of record," and therefore, the ALJ's decision was not supported by substantial evidence.  (Id. at 6.)

The Court will make a de novo determination of the portions of the R&R to which Objection has been made.  28 U.S.C. § 636(b)(1).  For reasons that follow, the Court will grant Plaintiff's first Objection.  As a result, the matter will be remanded for further development of the record concerning Plaintiff's alleged intellectual disability, and counsel's request for I.Q. testing.[1]

## II.   PROCEDURAL HISTORY

On November 24, 2010, Plaintiff filed an application for Supplemental Security Income ("SSI") alleging disability as of May 2008.[2]  (R. at 84, 151.)[3]  In May 2011, Defendant denied Plaintiff's claim.  (Id. at 84.)  As a result, she requested a hearing before an Administrative Law Judge ("ALJ").  (Id. at 82.)  On January 9, 2012, the hearing was held.  (Id. at 56.)  Plaintiff was represented by counsel.  (Id.)  At the hearing, the ALJ heard testimony from Plaintiff and a vocational expert.[4]  (Id.)

---

[1]  The Court will not discuss Plaintiff's second Objection concerning the ALJ's weight of the medical evidence because remand is necessary for Plaintiff's first Objection.  On remand, the ALJ will need to determine if the additional information regarding intellectual capacity affects Plaintiff's second Objection.

[2]  "Payments of benefits may not be made for any period that precedes the first month following the date on which an application is filed or, if later, the first month following the date all conditions for eligibility are met."  20 C.F.R. § 416.501.

[3]  Citations to the Administrative Record will be referred to as follows: ("R.")  The docket identifies the Administrative Record as Document Number 9, Exhibits 1-10.

[4]  Plaintiff's first language is Spanish.  (R. at 168.)  As a result, an interpreter was present at the hearing to translate.  (Id. at 58.)

On March 13, 2012, the ALJ concluded that Plaintiff had "not been under a disability within the meaning of the Social Security Act since November 24, 2010, the date the application was filed." (R. at 50.) Shortly thereafter, Plaintiff requested that the Appeals Council review the ALJ's decision. (Id. at 34.) The Appeals Council denied Plaintiff's request for review, affirming the ALJ's decision. (Id. at 1-6.)

On September 18, 2013, Plaintiff filed a Complaint in this Court against Defendant seeking judicial review of the Commissioner's decision denying SSI benefits. (Doc. No. 3.) After Plaintiff submitted her Brief and Statement of Issues and Defendant responded (Doc. Nos. 12, 13), the Court referred the matter to Magistrate Judge Rueter for an R&R. (Doc. No. 15.) On October 28, 2014, Judge Rueter filed his R&R recommending that the Court deny Plaintiff's Request for Review. (Doc. No. 16.) On November 19, 2014, Plaintiff filed Objections to Judge Rueter's Report. (Doc. No. 19.) On December 1, 2014, Defendant filed a Response in Opposition to Plaintiff's Objections. (Doc. No. 21.)

The Court must now make a de novo determination on Plaintiff's Objections. "[The Court] may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. [The Court] may also receive further evidence or recommit the matter . . . with instructions." 28 U.S.C. § 636(b)(1).

## III.   BACKGROUND

### A.   Plaintiff's History and Characteristics[5]

Plaintiff Mirna Liz Martinez was born on July 15, 1977 and was 34 years old at the time of her administrative hearing. (R. at 49.) Currently, she lives in Philadelphia with her four

---

[5]   The facts concerning Plaintiff's history and characteristics are contained in the Administrative Record, which includes her testimony given at the hearing before the ALJ. Plaintiff had trouble remembering dates and answering questions during the hearing, and also when completing her disability forms back in 2010. (R. at 65, 191.)

3

children, ages twelve, thirteen, fifteen, and sixteen.  (<u>Id.</u> at 62.)  Her first language is Spanish; however, at her administrative hearing she testified that she speaks "a teeny bit" of English.[6] (<u>Id.</u>)

Typically, Plaintiff starts her day around seven in the morning by taking her medications. (R. at 64.)  She then spends most of her day doing household chores with her children.  (<u>Id.</u>) Plaintiff returns to bed between five and seven at night.  (<u>Id.</u>)  Several times a month she goes food shopping, but only with a family member accompanying her.  (<u>Id.</u> at 196-97.)  Plaintiff's fear of people has resulted in her inability to take public transportation.  (<u>Id.</u> at 62, 196.)  Instead, her only mode of transportation is having her brother-in-law drive her to different places.  (<u>Id.</u> at 62.)  Essentially, Plaintiff spends the majority of her time inside her home because she refuses to go out in public.  (<u>Id.</u> at 193.)

### 1.    Plaintiff's Work History

In 1999, Plaintiff worked for a few months for a private individual as an aide doing personal care.  (R. at 66-67, 170.)  Next, she worked at a car wash for one month.  (<u>Id.</u> at 66, 170.)  In 2008, Plaintiff worked at an envelope packing facility for one day.  (<u>Id.</u> at 62, 170.) Plaintiff quit after one day because "all of a sudden, from the machine, all the envelopes started coming by really fast, really fast.  I got locked up.  I couldn't, I had a nervous attack.  I got so nervous, I started trembling and crying."  (<u>Id.</u> at 65.)  Plaintiff supports herself by receiving welfare benefits.  (<u>Id.</u>)

---

[6]  The ALJ and Judge Rueter noted conflicting evidence pertaining to Plaintiff's ability to speak English.  The ALJ concluded that Plaintiff was able to communicate in English because Temple Hospital noted that she spoke fluent English, and Plaintiff responded to questions at her hearing before they were translated.  (Doc. No. 16 at 5 citing R. at 46, 406.)

### 2. Plaintiff's Education

Plaintiff completed the eleventh grade in Puerto Rico while attending special education classes. (R. at 59-60, 67, 169-170.)  After moving to the United States a few years ago, Plaintiff attempted to obtain a GED.  (Id. at 68, 263.)  She attended GED classes for about one week and then stopped going because "there [were] a lot of people."  (Id. at 68.)  On December 8, 2008, Plaintiff underwent a comprehensive biopsychosocial evaluation at Community Organization for Mental Health and Rehabilitation ("COMHAR").[7]  (Id. at 294.)  This included a brief mental health examination, which found that Plaintiff had a below average intelligence.  (Id. at 303.)  Dr. Gene Corbman performed a consultative examination, in which he stated that Plaintiff was unable to do simple calculations, and "her general fund of information was poor . . . ."  (Id. at 312.)  Furthermore, Dr. Corbman stated that Plaintiff was not functioning entirely independently, and could not manage her own funds.  (Id.)

### B. Counsel's Request for I.Q. Testing at Plaintiff's Administrative Hearing

During her opening statement at Plaintiff's administrative hearing, counsel made several references to Plaintiff's intellectual capacity.  (R. at 59-61.)  Additionally, during her opening statement, counsel requested that the ALJ order a consultative examination with I.Q. testing for Plaintiff if the ALJ was unable to find her disabled under listing 12.04.  20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04.[8]  In her opening statement, counsel stated:

---

[7]  Plaintiff was treated at COMHAR from 2008 through 2011.  (R. at 46.)

[8]  20 C.F.R. Part 404, Subpart P, Appendix 1 is a list of impairments the ALJ considers in determining a Plaintiff's disability status.  Mental impairments are covered under § 12.00. These listings have severity requirements that a Plaintiff must meet or equal on a comparative basis.  The requirements are divided into categories.  Generally, the categories are divided as A, B, and C.  Specifically, § 12.04 is the listed mental impairment for Affective Disorders. Section 12.04 states, in pertinent part:

My client, your honor, went to the 11th grade in Puerto Rico, and she was in what's called Peopolo Uno [phonetic] which is a slow class in Puerto Rico. It's like a Special Ed in Puerto Rico. I notice, judge, that the physician at Friend's Hospital [phonetic] noted that her intelligence was below average, . . . One of the treating doctors, your honor, also noted that my client was of the low average intelligence. At this point, I don't have any IQ testing, judge. But I think we have enough in the record to show that my client, based on the record, would not be able to sustain employment. She falls within the 1204. . . . And, judge, I'm going to ask you, if you're not able to find a favorable finding in this case, that you send her out for IQ testing, and I'll tell you why. Looking at exhibit 2F, Dr. Corbman's evaluation, and I believe that I saw something there that says that she's also of the low average intelligence. . . . And, your honor, I think my client needs 1204, the C part. And if your honor's not able to make a favorable decision, I would ask your honor that she be sent up for IQ testing . . . .

---

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following: 1. Repeated episodes of decompensation, each of extended duration; or 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

I.Q. testing is only relevant for § 12.05, which is the listed mental impairment for Intellectual disability. This listing is divided into four categories, A, B, C, and D. Section 12.05 states, in pertinent part:

Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

\*       \*       \*

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

Though Plaintiff did not expressly claim that she met or equaled § 12.05(C), for the reasons that follow, the ALJ was put on notice that Plaintiff reasonably could meet or equal § 12.05(C).

(R. at 59-61.)

## C.   ALJ's Relevant Findings of Fact and Conclusions of Law

In order to determine if a claimant possesses an impairment that prevents a person from engaging in any substantial gainful activity, the ALJ uses a sequential five-step process.  "If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step."  (R. at 41.)  The five-step process is as follows:

(i)   At the first step, we consider your work activity, if any.  If you are doing substantial gainful activity, we will find that you are not disabled.

(ii)   At the second step, we consider the medical severity of your impairment(s).  If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

(iii)   At the third step, we also consider the medical severity of your impairment(s).  If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

(iv)   At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work.  If you can still do your past relevant work, we will find that you are not disabled.

(v)   At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work.  If you can make an adjustment to other work, we will find that you are not disabled.  If you cannot make an adjustment to other work, we will find that you are disabled.  20 C.F.R. § 404.1520(a)(4)(i)-(v).

(See R. at 41-43) (ALJ's explanation of her duty at each step of the five-step disability analysis).

In this case, at step one in her decision, the ALJ determined that Plaintiff had "not engaged in substantial gainful activity since November 24, 2010, the application date . . . ."  (Id. at 43.)  Under step two, the ALJ determined that Plaintiff had the severe impairments of bipolar

disorder and generalized anxiety disorder.  (Id.)  The ALJ found that "[t]he above impairments [caused] significant limitations in the [Plaintiff's] ability to perform basic work activities."  (Id.)

At step three, however, the ALJ concluded that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . ."  (Id.)  Specifically, the ALJ went through an analysis of the evidence and determined that "[t]he severity of [Plaintiff's] mental impairments, considered singly and in combination, [did] not meet or medically equal the criteria of listings 12.04 and 12.06."[9]  (Id.)

At step four of the analysis, the ALJ determined that:

> [Plaintiff] ha[d] the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff was] limited to simple, routine, repetitive tasks and simple decision making; she [was] limited to occasional interaction with the general public; the claimant must perform work independently; and she [was] limited to no more than occasional changes in the routine work setting.

(R. at 45.)  Next, the ALJ determined at step five that Plaintiff could perform work that existed in significant numbers in the national economy.  (Id. at 50.)  Therefore, the ALJ concluded that Plaintiff had "not been under a disability, as defined in the Social Security Act, since November 24, 2010, the date the application was filed . . . ."  (Id.)

## IV.   STANDARD OF REVIEW

When a district court reviews a final decision of the Commissioner of Social Security, the court must determine whether the record shows substantial evidence to support the

---

[9]   Plaintiff never claimed that she met or equaled the listed mental impairment § 12.06.  Section 12.06 covers mental impairment for Anxiety Disorders.  Additionally, the ALJ's decision never mentions § 12.05, even though counsel requested I.Q. testing.

Commissioner's decision.[10]   42 U.S.C. §§ 405(g), 1383(c)(3).   The Court "retain[s] a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner's] decision is not supported by substantial evidence."  Smith v. Califrano, 637 F.2d 968, 970 (3d Cir. 1981).  Substantial evidence is defined as "more than a mere scintilla . . . [and includes] such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Cherry v. Barnhart, 29 F. App'x 898, 901 (3d Cir. 2002) (quoting Richardson v. Perales, 402 U.S. 389, 407 (1971)).   "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g).  However, "with respect to the application of legal precepts, the standard of review in the District Court . . . is plenary."  Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003).

An ALJ, rendering a decision on behalf of the Commissioner, must set out a specific factual basis for each finding.  Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974).  The ALJ "must consider all the evidence and give some reason for discounting the evidence [the ALJ] rejects."  Ray v. Astrue, 649 F. Supp. 2d 391, 402 (E.D. Pa. 2009) (quoting Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994)).  Although the ALJ does not have to make reference to every relevant medical note in a voluminous medical record, the court expects the ALJ, as the fact finder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations.  See Reefer v. Barnhart, 326 F.3d 376, 381-82 (3d Cir. 2003).  Simply

---

[10] 42 U.S.C. § 405, which governs the procedure for reviewing Social Security Benefit applications, states that the Commissioner is "directed to make findings of facts and decisions" as to eligibility for benefits.  Pursuant to § 405(b)(1), if an applicant wishes to contest a decision of the Commissioner, the Commissioner must offer the applicant a hearing. An ALJ conducts the hearing, after which a decision is rendered which affirms, modifies, or reverses the decision of the Commissioner.  Therefore, for purposes of this Opinion, the terms "ALJ" and "Commissioner" will be used interchangeably.

referring to "the record" as a whole is insufficient.  Abshire v. Bowen, 662 F. Supp. 8, 9 (E.D. Pa. 1986); see also Carter v. Apfel, 220 F. Supp. 2d 393, 397 (M.D. Pa. 2000).

A claimant proves he has a "disability" when he demonstrates a medically determinable basis for an impairment that prevents him from engaging in any substantial gainful activity for a statutory 12-month period.  42 U.S.C. § 412(d)(1).

## V.      ANALYSIS

At issue in this case is Plaintiff's Objection that the ALJ was required to grant counsel's request for I.Q. testing regarding her intellectual capacity, or, at the very least, consider and explain the reasons for denying counsel's request.  For reasons that follow, the Court will remand the case to the ALJ for further development of the record regarding Plaintiff's alleged intellectual disability, including an express consideration of Plaintiff's request for I.Q. testing to determine whether Plaintiff meets or equals the requirements set forth in § 12.05.  The ALJ must determine and explain whether Plaintiff meets or equals § 12.05, and if not, expressly consider her alleged lower intelligence through steps four and five of the disability analysis.

### A.      Plaintiff's Argument

Plaintiff appeals to this Court arguing that the ALJ erred in not "fully and fairly developing the medical evidence" when she did not order Plaintiff's request for I.Q. testing during the administrative hearing.  (Doc. No. 12 at 7.)  Additionally, Plaintiff argues that the "ALJ's failure to even rule on Plaintiff's request was non-harmless error."  (Id.)  She alleges that the request for I.Q. testing was necessary to sufficiently develop the record regarding her intellectual capacity, but only if the ALJ was unable to find her disabled under the listed impairment in § 12.04.  (Doc. No. 19 at 3.)  In essence, Plaintiff's argument is that "it is impossible for this reviewing court to determine whether or not the ALJ even considered counsel's request, let alone the sufficiency of her basis (if any) for not ordering the requested

10

testing." (Doc. No. 12 at 8.) Thus, Plaintiff, at a minimum, requests that the Court remand the case "so the ALJ can order the requested I.Q. testing or so that she can provide a reviewable basis for declining to do so." (Id.)

### B.      Magistrate's Conclusion

In holding that the ALJ sufficiently developed the record regarding Plaintiff's intellectual capacity, Judge Rueter first discussed the interaction between Plaintiff's counsel and the ALJ during the administrative hearing. (Doc. No. 16 at 15-16.) Judge Rueter explained that Plaintiff's counsel "did opine that the record was sufficient for the ALJ to decide Plaintiff's disability status." (Id. at 15.) Defendant argued, and Judge Rueter found, that Plaintiff admitted that the record was sufficiently developed when counsel stated: "At this point, I don't have any IQ testing, judge. But I think we have enough in the record to show that my client, based on the record, would not be able to sustain employment." (Id.) Judge Rueter noted that Plaintiff's counsel "subsequently stated: 'And, judge, I'm going to ask you, if you're not able to find a favorable finding in this case, that you send her out for IQ testing.'" (Id. quoting R. at 60.)

Nevertheless, Judge Rueter found Plaintiff's argument unpersuasive because Plaintiff cited no authority requiring that the ALJ grant the request and order I.Q. testing. (Id.) Moreover, Plaintiff also cited no authority requiring the ALJ to explain her rationale for denying counsel's request. (Id.) Furthermore, Judge Rueter reasoned that "the relevant inquiry is whether the record was sufficiently developed to allow the ALJ to decide the issues in this case."[11] (Id.) Judge Rueter noted that:

---

[11] Judge Rueter noted that "[a]n ALJ has a duty to develop the record in a social security case," but that Plaintiff "has the burden of producing evidence sufficient to show the existence of a disability." (Doc. No. 16 at 2) (citing Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995) and Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987)). Judge Rueter continued "[t]here is no requirement that an ALJ 'search out all relevant evidence which might be available, since that

> [T]he ALJ considered the evidence regarding [P]laintiff's intellectual capacity, and the effect of limitations therefrom on her ability to perform work.  The ALJ acknowledged that records indicated [P]laintiff had "below average intelligence."  However, the ALJ explained that [] despite this deficit, the medical record demonstrated that her "attention and concentration were reportedly not impaired," she was able to answer questions appropriately and in a goal-oriented manner, and exhibited no evidence of any formal thought disorder, delusions, or hallucinations.

(Id. at 16 quoting R. at 46-48.)  Judge Rueter concluded therefore that the ALJ fulfilled her duty to sufficiently develop the record regarding Plaintiff's intellectual capacity.  (Doc. No. 16 at 16.)

### C.        Plaintiff's Objections to the Magistrate's Report and Recommendation

Plaintiff has filed with this Court two Objections to the Magistrate's Report and Recommendation.  (Doc. No. 19.)  First, that "[t]he magistrate judge's conclusion . . . that the ALJ had no duty to even rule on Plaintiff's request that she order a consultative examination with I.Q. testing is erroneous and contrary to law."  (Id. at 1.)  For this Objection, Plaintiff argues that the ALJ had a duty to investigate the facts and develop arguments both for and against granting benefits.  (Id. at 2) (citing Sims v. Apfel, 530 U.S. 103, 111 (2000)).  Plaintiff claims that the ALJ's duty to investigate the facts and develop the record required the ALJ to grant counsel's request, or mention that she considered counsel's request in the administrative decision.[12]  (Doc. No. 19 at 6.)

Essentially, whether the ALJ had a duty to fully and fairly develop the record concerning Plaintiff's intellectual capacity by ordering a consultative examination with I.Q. testing, and whether the ALJ was required to mention that she considered Plaintiff's request for I.Q. testing in her decision, may influence the outcome of the ruling on the request for disability coverage.

---

would in effect shift the burden of proof to the government.'"  (Doc. No. 16 at 2) (quoting Hess v. Sec'y Health, Educ. and Welfare, 497 F.2d 837, 840 (3d Cir. 1974)).

[12] Plaintiff claims that the Administrative Record showed Plaintiff had a below average intelligence, and therefore, counsel's request for I.Q. testing was in no way unusual.  (Doc. No. 19 at 4.)

Because of these considerations, the Court will remand the case for further development of the record concerning Plaintiff's alleged intellectual capacity, including an express consideration of Plaintiff's request for I.Q. testing to determine whether Plaintiff meets or equals the provisions of § 12.05.  The ALJ must determine and explain whether Plaintiff meets or equals § 12.05, and if not, expressly consider her alleged lower intelligence through steps four and five of the disability analysis.

### D.    ALJ's Requirement to Explain Reasons for Rejecting Relevant Evidence

An ALJ is required to hear and evaluate all relevant evidence.[13]  Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981).  If probative evidence is rejected then "an explanation from the ALJ . . . is required so that a reviewing court can determine whether the reasons for rejection were improper."  Id. at 706-07.  The "ALJ's failure to explain [her] implicit rejection of [relevant] evidence or even to acknowledge its presence [is] error."  Id. at 707.  There is no requirement, however, that "the 'ALJ use specific language or adhere to a particular format in conducting [her] analysis.'"  Cooper v. Comm'r of Soc. Sec. Admin., 563 F. App'x 904, 911 (3d Cir. 2014) (quoting Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004)).  But language that the ALJ uses must be sufficient for a reviewing court to determine whether the ALJ considered all relevant evidence regarding Plaintiff's possible listed impairments.  Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119-20 (3d Cir. 2000).  When there is no indication as to whether relevant evidence was considered, it is impossible for a reviewing court to determine if the ALJ's decision was supported by substantial evidence.  Cotter, 642 F.2d at 705.

---

[13]  This includes objective medical evidence, testimony, and counsel's statements during a Plaintiff's administrative hearing.  Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000).

### E.    ALJ's Duty to Develop the Record

Encompassed in the requirement to explain why relevant evidence was rejected is the ALJ's duty to fully and fairly develop the record.  Ventura, 55 F.3d at 902.  Specifically, there is a duty to "[develop] the record when there is a suggestion of mental impairment by inquiring into the present status of impairment and its possible effects on the [Plaintiff's] ability to work." Plummer v. Apfel, 186 F.3d 422, 434 (3d Cir. 1999).  One tool that the ALJ can use in satisfying this requirement is ordering consultative examinations.  20 C.F.R. § 416.917.  Ordering a consultative examination is not mandatory, but the ALJ has discretion in using this tool.  Id. §§ 404.1519, 416.919.  It is necessary, however, that an ALJ order a consultative examination "when the evidence as a whole . . . is not sufficient to support a decision . . . ."  Ray v. Astrue, 649 F. Supp. 2d 391, 408 (E.D. Pa. 2009) (quoting 20 C.F.R. §§ 404.1519a(b), 416.919a(b)).  An ALJ is required, however, to "explain [her] reasons for deciding not to seek such additional information and [her] reasons must be grounded in the evidence."  Schwartz v. Halter, 134 F. Supp. 2d 640, 658 (E.D. Pa. 2001); see also Willingham v. Astrue, No. 09-2368, 2010 WL 629839, at *9-10 (E.D. Pa. Feb. 17, 2010) (Rueter, J.) (remanding the case because it was impossible to determine whether the ALJ's decision considered relevant evidence, and on remand should consider ordering a consultative examination or explain why an examination is unnecessary).  Finally, the significant requirement for when a plaintiff's evidence "fairly raises the question of whether [the] plaintiff is disabled within the meaning" of a listed impairment, is that the ALJ is then obligated to develop the record concerning the possible listed impairment, and must analyze the plaintiff's impairments with a medical expert.[14]  Maniaci v. Apfel, 27 F. Supp. 2d 554, 558-59 (E.D. Pa. 1998).

---

[14] "The ALJ is responsible for deciding the ultimate legal question of whether a listing is met or equaled."  Schwartz, 134 F. Supp. 2d at 659 (citing 20 C.F.R. §§ 404.1527(e), 416.926(d),

For example, in <u>Schwartz</u>, plaintiff first alleged that he suffered from a mental impairment at his administrative hearing.  134 F. Supp. 2d at 656 n.16.  Counsel raised the issue of a mental impairment at plaintiff's administrative hearing when he briefly questioned plaintiff concerning his education, which showed that plaintiff was enrolled in special education classes. <u>Id.</u>  At the end of the hearing, counsel attempted to seek additional evidence concerning plaintiff's low intelligence.  <u>Id.</u>  Given plaintiff's testimony regarding his limited education, counsel stated: "I would ask that [plaintiff] . . . based on [] his testimony that you consider having him evaluated by the State Agency on the basis of, for psychological testing."  <u>Id.</u>  The ALJ's decision in <u>Schwartz</u> did not mention whether he considered counsel's request for intelligence testing, and if so, his basis for rejecting the request.  <u>Id.</u> at 658.

Plaintiff then filed a complaint in this court arguing that the ALJ failed in his duty to develop the record concerning his alleged low intelligence, and by not granting counsel's request for psychological testing.  <u>Id.</u> at 656.  Additionally, plaintiff argued that the ALJ erred by not mentioning whether he considered counsel's request, and if so, his basis for rejecting it.  <u>Id.</u>

The court explained that an ALJ has a duty to secure relevant information regarding a plaintiff's entitlement to benefits.  <u>Id.</u> (citing <u>Hess</u>, 497 F.2d at 841).  Additionally, the court determined that the "ALJ may not ignore evidence of a mental impairment."  <u>Id.</u> at 656.  When evidence in the record suggests a possible mental impairment, the ALJ "must determine the severity of the mental impairment(s) by using the ratings of functional limitations and determine whether the impairment meets or is equivalent in severity to a listed mental disorder."  <u>Id.</u> at 657 (citing 20 C.F.R. § 404.1520(d)).  This comes after the ALJ first evaluates "the [plaintiff's]

---

416.927(e).  Although counsel, in this case, stated that she believed Plaintiff met the requirements under § 12.04(C), it was the ALJ's responsibility to consider all of the relevant evidence and determine whether Plaintiff met or equaled one of the listed mental impairments.

'pertinent symptoms, signs, and laboratory findings to determine whether a medically determinable mental impairment(s) [exist].'" Id. at 657 (quoting 20 C.F.R. § 404.1520a(b)(1)).

The court concluded that "the ALJ did not give proper consideration to [plaintiff's] alleged mental impairments as is required by law, and thus did not fulfill his duty to develop the record with respect to [plaintiff's] alleged low intelligence." Id. at 657. The court reasoned that plaintiff "produced sufficient evidence to put the ALJ on notice that he may have low intelligence and that the ALJ should determine whether this disability was a mental disability . . . ." Id. In reaching this conclusion, the court explained that plaintiff's evidence of school records showing poor grades and his enrollment in special education classes was sufficient to put the ALJ on notice of a mental impairment. Id. at n.18. Therefore, the court reasoned that "[a]lthough the [plaintiff] bears the burden of putting forth evidence of his impairments, the [ALJ] is required to develop [plaintiff's] medical history and arrange for consultative examinations if the information needed is not readily available from the [plaintiff's] treatment sources." Id. at 657-58 (citing 20 C.F.R. §§ 404.1512, 416.912). The court explained that this was especially true when mental impairments are at issue. Schwartz, 134 F. Supp. 2d at 658. The court noted, however, that the ALJ did have discretion to order a consultative examination. Id. But, the "ALJ must still explain his reasons for deciding not to seek such additional information and his reasons must be grounded in the evidence." Id.

Finally, the court remanded the case for further development of the record regarding plaintiff's alleged low intelligence. Id. The court held that on remand the ALJ was to determine and explain whether plaintiff's impairment matched or equaled listing § 12.05. Id. The court also held that the ALJ was required to expressly consider counsel's request and plaintiff's alleged low intelligence, and must mention whether he considered the request in his decision. Id. at 660.

In doing so, the court reasoned that there was nothing in the ALJ's decision indicating whether the ALJ considered counsel's request for intelligence testing, and if so, his basis for rejecting the request.  Id.

      **F.**    **The ALJ Failed in her Duty to Develop the Record Regarding Plaintiff's Request for I.Q. Testing**

Plaintiff argues that "the ALJ's failure to order the requested I.Q. testing and her failure to even mention that she considered Plaintiff's request . . . was not harmless error and prevents . . . meaningful review of her decision by this Court, requiring reversal and remand."  (Doc. No. 19 at 6.)  The Court agrees.

The Administrative Record, at the time of Plaintiff's administrative hearing, contained medical evidence showing that Plaintiff had below average intelligence.  This evidence was brought to the attention of the ALJ when Plaintiff's counsel referenced this evidence with the purpose of requesting that the ALJ order a consultative examination with I.Q. testing.  (R. at 60-61.)  While referencing evidence concerning Plaintiff's intellectual capacity, counsel stated: "At this point, I don't have any IQ testing, judge.  But I think we have enough in the record to show that my client, based on the record, would not be able to sustain employment.  She falls within the 1204."  (Id. at 60.)  Counsel then added "And, judge, I'm going to ask you, if you're not able to find a favorable finding in this case, that you send her out for IQ testing, and I'll tell you why."  (Id.)  Counsel subsequently noted evidence showing Plaintiff's low intelligence.[15]  Counsel ended her opening statement, saying "And, your honor, I think my client needs 1204,

---

[15]  Specifically, the evidence was that Plaintiff went only to the 11th grade and was enrolled in special education classes.  Physician notes state she had below average intelligence and a mental examination stated that she had below average intelligence.  She attended GED classes for about one week, and Dr. Corbman's evaluation was that she was not functioning entirely independently, was unable to do simple calculations, and her general fund of information was poor.  (R. at 59-61, 303, 312.)

the C part.  And if your honor's not able to make a favorable decision, I would ask your honor

that she be sent up for IQ testing . . . ."  (Id. at 61.)

> 1.     **Remand is necessary because the ALJ failed to provide explanation for rejecting evidence of Plaintiff's intellectual capacity and there is no indication the ALJ considered counsel's request for I.Q. testing**

Similar to Schwartz, in the instant case, the ALJ's decision never mentioned counsel's

request for I.Q. testing or whether she considered the evidence concerning Plaintiff's intellectual

capacity that Plaintiff's counsel referred to during the administrative hearing.  (R. at 41-51.)  In

fact, not once did the ALJ mention Plaintiff's intellectual capacity and whether it was considered

as a mental impairment.[16]  An ALJ is required to explain her reasons for rejecting relevant

evidence so the reviewing court can meaningfully review whether relevant evidence was

considered by the ALJ.  See Cotter, 642 F.2d at 706-07 (remanding the case because the ALJ did

not provide an adequate basis so that the reviewing court could determine whether the decision

was supported by substantial evidence).  It is impossible for this Court to determine that

substantial evidence supported the ALJ's decision because there is no indication that the ALJ

considered Plaintiff's intellectual capacity as a mental impairment, or whether she considered

counsel's request for I.Q. testing.

Defendant argued, and Judge Rueter found, that the "ALJ acknowledged that records

indicated [P]laintiff had 'below average intelligence.'"  (Doc. No. 16 at 16 quoting R. at 46-48.)

Judge Rueter reasoned that "the ALJ explained that [] despite this deficit, the medical record

demonstrated her 'attention and concentration were reportedly not impaired . . . ."  (Id.)  The

---

[16] There was one reference to Plaintiff's intelligence being below average, which Judge Rueter also noted.  Under her step four analysis, the ALJ stated: "Mental status examination revealed a depressed, helpless, and sad mood, but showed normal hygiene and grooming, cooperative and appropriate behavior, and appropriate affect.  There [was] no thought content/process or perceptual disturbances.  It was noted the claimant's intelligence was below average and her attention and concentration were reportedly not impaired."  (R. at 46-47.)

ALJ's decision, however, acknowledged only one piece of evidence in the Administrative Record, in which she briefly mentioned that the mental status examination noted Plaintiff's below average intelligence.  (R. at 46-47.)  The ALJ's decision, however, does not explain whether Plaintiff's low intelligence was considered during the disability analysis.  Additionally, the ALJ determined that Plaintiff had a limited education and was able to communicate in English, but only provided an explanation for why Plaintiff was able to communicate in English.  (Id. at 49.)  There was no explanation in the ALJ's decision as to whether Plaintiff's low intelligence was considered as a mental impairment.  Furthermore, Defendant and the reviewing court may not "supply [their] own reasons to support an ALJ's decision; the court must limit its analysis to the explanations actually provided for in [her] decision. . . .  Thus, the court shall not consider . . . assertions, which the ALJ did not advance in [her] decision."  Plank v. Colvin, Civ. No. 12-4144, 2013 WL 6388486, at *7 (E.D. Pa. Dec. 6, 2013) (citing Fargnoli v. Massanari, 247 F.3d 34, 44 n.7 (3d Cir. 2001); see also SEC v. Chenery Corp., 318 U.S. 80, 87 (1943) (stating that "the grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based").

Therefore, Judge Rueter's explanation that the ALJ sufficiently reviewed "records" that noted Plaintiff's below average intelligence because Plaintiff allegedly conceded that the record was sufficiently developed for the ALJ to decide the issues in this case is not supportable.

> **2.    Remand is necessary because the ALJ failed to develop the record regarding Plaintiff's low intellectual capacity**

The ALJ had an obligation to develop Plaintiff's Administrative Record concerning her alleged low intellectual capacity because Plaintiff presented evidence that fairly raised the

question of whether she could meet or equal listed impairment § 12.05(C).[17]  Plaintiff provided

the ALJ with the following evidence: (1) her inability to graduate from high school, (2) her

enrollment in special education classes, (3) there were several doctors that noted she had below

average intelligence, (4) Plaintiff's failure to obtain a GED, and (5) that she had a history of

unskilled work not lasting longer than three months.  Additionally, the record did not contain any

I.Q. scores.  This omission, coupled with counsel's request for I.Q. testing during Plaintiff's

administrative hearing and the other evidence presented, is substantially similar to the facts that

the court in Schwartz found was sufficient to put the ALJ on notice that Plaintiff had a mental

impairment regarding low intelligence.  134 F. Supp. 2d at 657, 658, n.18.

Therefore, Plaintiff met her burden of producing evidence that fairly supported the claim

that Plaintiff is disabled within the meaning of the listed impairment in § 12.05(C).  See, e.g.,

Markle, 324 F.3d 182, 188-89 (holding that a Plaintiff's placement in special education classes,

dropping out of school, history of unskilled work, and the absence of any traumatic event that

could have triggered intellectual disability later in life, when coupled with a valid I.Q. score was

reasonable for possible § 12.05(C) listed impairment); Sinkler v. Colvin, No. 3:14-CV-00463,

2015 WL 507215, at *7 (M.D. Pa. Feb. 6, 2015) (remanding the case because ALJ was obligated

to order the requested I.Q. testing after Plaintiff presented evidence that she was in special

education classes, no traumatic event later in life, and administrative record lacked I.Q. scores).

Plaintiff's evidence fairly raised the question as to whether she reasonably could meet

§ 12.05(C), and as a result, the evidence required the ALJ to fulfill her duty to develop the

---

[17] To meet the requirements of § 12.05(C), as noted above, a plaintiff must "i) have a valid
verbal, performance or full scale IQ of 60 through 70, ii) have a physical or other mental
impairment imposing additional and significant work-related limitation of function, and
iii) show that the intellectual disability was initially manifested during the developmental
period (before age 22)."  Markle, 324 F.3d 182, 187 (3d Cir. 2003).  It is not a requirement
that Plaintiff be formally diagnosed with intellectual disability.  Id.

record concerning listed impairment § 12.05(C) and Plaintiff's intellectual capacity.  See Maniaci, 27 F. Supp. 2d at 558-59.  At the very least, the ALJ was required to explain her reasons for not seeking additional evidence, such as the requested I.Q. testing.  As stated earlier, there is nothing within her decision that indicates the ALJ considered counsel's request to order an I.Q. test, or whether the record was sufficiently developed concerning Plaintiff's intellectual capacity.

After careful review of the decision by the ALJ and Judge Rueter's Report, and this Court's own review of the record, it is evident that the ALJ's decision is not supported by substantial evidence.  Accordingly, the Court will remand this case for further development of the record concerning Plaintiff's alleged intellectual capacity.  The ALJ must expressly consider counsel's request for I.Q. testing, and determine whether Plaintiff's alleged low intelligence meets or equals § 12.05.[18]  If Plaintiff does not meet or equal § 12.05, the ALJ must expressly consider Plaintiff's alleged low intelligence through steps four and five of the disability analysis.

## VI.   CONCLUSION

For the foregoing reasons, the Court will decline to approve and adopt the R&R of Magistrate Judge Thomas J. Rueter.  (Doc. No. 16.)  The Court will remand the case to the ALJ for further proceedings and explanations consistent with this Opinion.  An appropriate Order follows.

---

[18] If Plaintiff meets or equals § 12.05, then Plaintiff is considered disabled per se, and the ALJ need not analyze Plaintiff's mental impairments in accordance with steps four and five. Burnett, 220 F.3d at 119.  See 20 C.F.R. § 404.1520(d) (2012).